IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUDITH SCHEER**<br>Warminster, PA 18974 : | CIVIL ACTION NO. 09-209 |
| Plaintiff, : | |
| v. : | |
| **MOTOROLA, INC.**<br>1303 East Algonquin Road<br>Schaumburg, IL 60196 : | |
| Defendant. : | |

### FIRST AMENDED COMPLAINT

I. **INTRODUCTION**

Plaintiff, Judith Scheer, brings this action against her former employer, Motorola, Inc. Ms. Scheer was discriminated against and subjected to a hostile work environment because of her sex, and retaliated against after she complained about the same in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

II. **PARTIES**

1. Plaintiff, Judith Scheer, is an individual and a citizen of the Commonwealth of Pennsylvania. She resides in Warminster, PA.

2. Plaintiff is female.

3. Defendant, Motorola, Inc., is a Delaware corporation with a

principal place of business at 1303 East Algonquin Road, Schaumburg, IL 60196.

4. At all times material hereto, Plaintiff worked at Defendant's branch office located at 101 Tournament Drive, Horsham, PA 19044.

5. Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

6. At all times material hereto, Defendant employed more than fifteen (15) employees.

7. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

8. At all times material hereto, Defendant acted as an employer within the meanings of the statutes which form the basis of this matter.

9. At all times material hereto, Plaintiff was an employee of Defendant within the meanings of the statutes which form the basis of this matter.

## III. **JURISDICTION AND VENUE**

10. The causes of action which form the basis of this matter arise under Title VII and the PHRA.

11. The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

12. The District Court has jurisdiction over all counts pursuant to 28 U.S.C. §1332 since the amount in controversy in the present action exceeds the sum or value of seventy five thousand dollars ($75,000), exclusive of interests

and costs, and where there exists complete diversity of citizenship, as Plaintiff is a citizen of the Commonwealth of Pennsylvania and Defendant is not a citizen of the Commonwealth of Pennsylvania.

13.     The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

14.     Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

15.     On or about July 17, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination and retaliation alleged herein.  This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge (with minor redactions for purposes of electronic filing of confidential/identifying information).

16.     On or about October 23, 2008, the EEOC issued to Plaintiff a Dismissal and Notice of Rights.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of that notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

17.     On or about May 21, 2009, Plaintiff filed a Second Charge of Discrimination with the EEOC, complaining of acts of discrimination and retaliation alleged herein.  This Charge was cross-filed with the PHRC.  Attached hereto, incorporated herein and marked as Exhibit "3" is a true and correct copy of the Second EEOC Charge (with minor redactions for purposes of electronic

filing of confidential/identifying information).

18. On or about June 30, 2009, the EEOC issued to Plaintiff a Dismissal and Notice of Rights regarding her Second Charge of Discrimination. Attached hereto, incorporated herein and marked as Exhibit "4" is a true and correct copy of that notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

19. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.   **FACTUAL ALLEGATIONS**

20. On or about October 23, 2000, Plaintiff was hired by Defendant as an Administrative Assistant, reporting to Don Conrad (male), Director of Engineering. In or about September 2006, Plaintiff was transferred into the role of Calibration Administrator.

21. At the time of her transfer, Plaintiff was told that she officially reported to Joseph DiBiase (male), Compliance Engineering Manager but that she unofficially reported to Michael Welty (male), Compliance Engineer. Plaintiff was told that Mr. Welty was responsible for training her, assigning her work and providing her with feedback regarding her performance and that he was in charge of projects to which she was assigned.

22. At all times material hereto, Plaintiff performed her duties in a highly competent manner.

23. Shortly after she began reporting to Mr. Welty, Plaintiff was subjected to harassment and discriminatory conduct based on her sex. Such

conduct included, but was not limited to, Mr. Welty:

    a)    Spending excessive, and unnecessary, time at Plaintiff's desk;

    b)    Instructing Plaintiff not to tell Mr. DiBiase that he was helping her and spending so much time at her desk;

    c)    Commenting and asking questions regarding Plaintiff's marriage, husband and family;

    d)    Telling Plaintiff stories about watching his five (5) year old niece go to the bathroom;

    e)    Telling Plaintiff that he left his dirty underwear on the floor so that his cats could rub themselves in it;

    f)    Becoming visibly angry and upset when Plaintiff interacted with other male colleagues;

    g)    Sending flowers to Plaintiff's home after admitting that he searched for her home address on the Internet;

    h)    Sending an e-mail to Plaintiff in which he commented that an incident that had occurred "could turn into the Sopranos…Then I'm gonna blow your freaking brains out" and concluding that e-mail with, "Flowers and sunshine, and rainbows, and sugar, and spice, and hugs, and kisses;"

    i)    Telling Plaintiff that he had a birthday gift for her that he wanted to give her in private outside of the office and, when Plaintiff refused his invitation, presenting her with a framed photograph of her father from World War II and telling her that he had spent several hours searching for it on the Internet;

j) Starting to cry when Plaintiff was not enthusiastic about his gift and asking, "Aren't you happy that I found Daddy, you don't seem very happy;"

k) Giving Plaintiff a birthday card that included a personal, handwritten poem and telling her that he had purchased a blank card so that he could write his own words to her;

l) Chasing Plaintiff down the hall to the women's restroom where she was forced to remain for a period of time after she asked him to stop harassing her;

m) Calling Plaintiff by a nickname, "Misty," that he had chosen for her because, he said, she looked like a "Misty;"

n) Expressing anger at Plaintiff when she told him that she would no longer attend the gym classes that she used to attend and in which he also participated; and,

o) Hounding Plaintiff to go to lunch or out after work despite her repeated refusals.

24. On or about January 22, 2007, Plaintiff complained about Mr. Welty's harassing and discriminatory conduct to Mr. Conrad, to whom she had reported for approximately five (5) years until in or about September 2006.

25. Mr. Conrad told Plaintiff that he was obligated to report her complaint to Defendant's Human Resources Department. Plaintiff told Mr. Conrad that she feared retaliation if she complained.

26. After Mr. Conrad contacted Dina Toal, Human Resources Manager,

to inform her of the situation, Plaintiff met with Ms. Toal and spoke with Harriet Solomon, Human Resources Manager. She complained about the hostile work environment to which she was being subjected, including her fear of retaliation and Mr. Welty's frequent threats to her that he had substantial influence over Mr. DiBiase.

27. In response to Plaintiff's complaints, Ms. Solomon advised her that she should talk to Mr. Welty in a "positive and upbeat" manner to let him know that she was uncomfortable with his conduct and only wanted a professional relationship with him.

28. Pursuant to Ms. Solomon's instruction, Plaintiff specifically told Mr. Welty that his conduct was unwelcome.

29. After Plaintiff complained to Human Resources, and to Mr. Welty, regarding his conduct, Defendant engaged in discriminatory and retaliatory conduct against her. Such conduct included, but was not limited to, Mr. Welty:

    a) Telling Plaintiff that he had substantial influence over Mr. DiBiase;

    b) Informing Plaintiff's colleagues that he and Mr. DiBiase were concerned about her ability to perform her job;

    c) Begging Plaintiff to tell him what was wrong with her;

    d) Telling Plaintiff that, "if you never speak to me again, I will understand, but if I make you lose your job, I could never forgive myself;"

    e) Stating that Plaintiff was "immature" and that he would "fix the problem;"

   f) Becoming agitated when Plaintiff refused to engage in non-business related conversation with him and asked him to stop calling her "Misty," and,

   g) Telling Plaintiff that her refusal to engage in personal conversation bothered him.

 30. On or about March 5, 2007, Plaintiff complained to Bonnie Sick, Human Resources regarding Mr. Welty's continued harassment and discriminatory and retaliatory conduct. Ms. Sick's response to Plaintiff's complaints was, "Wow, we need to get this man some help."

 31. Ms. Sick instructed Plaintiff to work from home until further notice.

 32. On the following day, Ms. Sick and Barry Lenhart, Corporate Security, contacted Plaintiff to discuss Mr. Welty. During the discussion, Ms. Sick and Mr. Lenhart asked Plaintiff the following:

   a) If she knew whether Mr. Welty owned a gun;

   b) If Mr. Welty knew her home address;

   c) If she had had an affair with Mr. Welty;

   d) If she thought that Mr. Welty could be a pedophile; and,

   e) If she thought that Mr. Welty viewed pornography.

 33. Mr. Lenhart recommended that Plaintiff and her family leave their home and stay somewhere else overnight. He refused to tell Plaintiff the basis for his recommendation.

 34. Mr. Lenhart recommended that Plaintiff have someone stay with her so that she would not be alone while she was working from home and

provided her with a walkie-talkie in case she needed to contact the Corporate Security Department.

36. Mr. Lenhart also advised Plaintiff to seek a restraining order against Mr. Welty. He then immediately reconsidered his position and warned Plaintiff that if she did obtain a restraining order, she would risk angering Mr. Welty. Mr. Lenhart refused to tell Plaintiff why he was concerned about her safety.

36. On or about March 7, 2007, Ms. Sick advised Plaintiff that she could return to work. Ms. Sick also told Plaintiff that a search of Mr. Welty's computer resulted in him being placed on administrative leave pending an investigation.

37. On or about March 8, 2007, Plaintiff returned to work.

38. On or about March 13, 2007, Ms. Sick told Plaintiff that Mr. Welty was "smitten" with her. Ms. Sick also expressed her opinion that situations are "blown out of proportion" which made them more difficult to handle than they had to be.

39. On or about March 16, 2007, Ms. Sick and Mr. Lenhart again questioned Plaintiff. They asked her how the hostile work environment to which she had been subjected affected her marriage and whether Mr. Welty had ever asked her to have an affair with him.

40. Ms. Sick informed Plaintiff that either she or Mr. Welty would be transferred to a different location.

41. On or about March 20, 2007, Plaintiff received a voice mail message from Ms. Sick informing her that Mr. Welty had returned from leave and

was back in the office, that he would be moved to another building (but would remain in the same department as Plaintiff) and that she should try to avoid him.

42.   On or about March 23, 2007, Ms. Sick told Plaintiff that Defendant would be counseling Mr. Welty and that she would be informed of the results of an investigation into her allegations.

43.   Plaintiff was not informed about the results of any investigation into her complaints of harassment and a hostile work environment.

44.   Defendant did not tell Plaintiff that her safety was no longer at risk.

45.   Plaintiff continued to be subjected to discriminatory and retaliatory conduct which included, but was not limited to, the following:

   a)   Mr. Welty was moved to a building in which most of the department's employees were based. Plaintiff remained in a building in which she was isolated from most of her colleagues, including Mr. DiBiase;

   b)   Until in or about November 2008, Mr. Welty remained in charge of the project to which Plaintiff was primarily assigned. If Plaintiff had questions regarding her work assignments, she had to relay them to an intermediate employee, who, in turn, informed Mr. Welty;

   c)   In or about November 2008, Mr. DiBiase removed certain of Plaintiff's job duties from her area of responsibility and assigned them to a male colleague.

   d)   Plaintiff was excluded from certain department-wide meetings run by Mr. Welty and Mr. DiBiase, limiting her access to information that she needs to perform her job; and,

e)   Plaintiff was forced to limit her attendance at department-wide lunches and/or parties, as to restrict her interaction with Mr. Welty.

46.   On or about May 13, 2009, Plaintiff was terminated. She was told that the reason for her termination was that her position was being eliminated.

47.   Upon information and belief, Plaintiff was one of Mr. DiBiase's only female direct reports, the only one who complained of a hostile work environment and the only one of his direct reports who was terminated.

48.   Upon information and belief, Plaintiff was replaced by a male employee who had not complained of discriminatory conduct.

49.   Mr. Welty remains employed with Defendant.

50.   Defendant's reason for terminating Plaintiff's employment was pretextual.

51.   Plaintiff's sex was a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of Plaintiff, in the creation of the hostile work environment to which Plaintiff was subjected and in the termination of Plaintiff.

52.   Plaintiff's complaining of discrimination was a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, in the creation of the hostile work environment to which Plaintiff was subjected and in the termination of Plaintiff.

53.   Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take appropriate corrective and remedial measures to make the workplace free of harassing,

discriminatory and retaliatory conduct.

54. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, including the hostile work environment to which Plaintiff was subjected and Plaintiff's termination, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and/or loss of life's pleasures, the full extent of which is not known at this time.

55. The discriminatory and retaliatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

56. The retaliatory actions taken against Plaintiff after she complained of harassment and a hostile work environment would have discouraged a reasonable employee from complaining of discrimination.

57. Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights.

58. The conduct of Defendant, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendant.

## COUNT I

59. Plaintiff incorporates herein by reference paragraphs 1 through 58 above, as if set forth herein in their entirety.

60. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

61. Said violations were malicious and/or committed with reckless indifference against Plaintiff and warrant the imposition of punitive damages.

62. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein.

63. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

64. No previous application has been made for the relief requested herein.

## COUNT II

65. Plaintiff incorporates herein by reference paragraphs 1 through 64 above, as if set forth herein in their entirety.

66. Defendant, by the above improper, discriminatory and retaliatory acts, has violated the PHRA.

67. Said violations were intentional and willful.

68. As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees.

69. Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

70. No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and equitable relief to the extent that she has been harmed by Defendant's conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of the PHRA;

(c) enjoining and permanently restraining the violations alleged herein;

(d) entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(e) awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(f) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss

of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

      (g)    awarding punitive damages to Plaintiff under Title VII;

      (h)    awarding Plaintiff such other damages as are appropriate under the Title VII and the PHRA;

      (i)    awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

      (j)    granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE LAW OFFICES LLC**

Dated: 07/07/09    BY: _/s/ Caren N. Gurmankin_
Stephen G. Console (36656)
Caren N. Gurmankin
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676
(215) 545-8211 (fax)

Attorneys for Plaintiff,
Judith Scheer

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDITH SCHEER : | CIVIL ACTION |
| : | NO. 09-00209 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| MOTOROLA, INC. : | |
| : | |
| Defendant : | |

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiff's First Amended Complaint was served via first Class Mail (with a copy via email) on this 7th Day of July, 2009, upon counsel for Defendant, as follows:

>Annette Tyman, Esquire
>Seyfarth Shaw LLP
>131 South Dearborn Street, Ste. 2400
>Chicago, IL 60603
>
>Patrick J. Broderick, Esquire
>Wilson, Broderick & Associates
>One East Airy Street
>P. O. Box 389
>Norristown, PA 19404

_____
CAREN N. GURMANKIN, ESQ